Stacey Dolgin-Kmetz, Esq. Informal Opinion Acting County Attorney No. 2001-3 County of Westchester Michaelian Office Building 148 Martine Avenue, 6th Floor White Plains, N Y 10601
Dear Ms. Dolgin-Kmetz:
You have inquired whether recently-enacted federal legislation, the Electronic Signatures in Global and National Commerce Act ("E- SIGN"), 106 P.L. 229, 114 Stat. 464 (2000), preempts the New York State Recording Act (the "Recording Act"), see Real Property Law ("RPL"), Art. 9, which pertains to the recording of instruments affecting real property. Specifically, you have asked whether E-SIGN obligates a county recording officer to accept documents submitted for recordation that bear only an electronic signature, or whether the Recording Act "still requires the rejection of documents that are submitted for recordation that lack an original signature but bear an electronic signature." We understand that by "original signature," you mean a signature affixed by hand, as opposed to an "electronic signature," which E-SIGN defines as "an electronic sound, symbol, or process, attached to or logically associated" with a record "executed or adopted by a person with the intent to sign the record." E-SIGN § 106(5).
The question you pose is complex, and there is no clear legal authority that provides a definitive answer. Nevertheless, it is our view that E-SIGN probably does not preclude a county recording officer from rejecting a filing submitted for recordation that bears only an electronic signature but lacks an "original signature."
 Statutory Framework 1. The Recording Act
The centerpiece of New York's Recording Act is RPL § 291, which reads in relevant part as follows:
 A conveyance of real property, within the state, on being duly acknowledged by the person executing the same, or proved as required by this chapter, and such acknowledgment or proof duly certified when required by this chapter, may be recorded in the office of the clerk of the county where such real property is situated, and such county clerk shall, upon the request of any party, on tender of the lawful fees therefor, record the same in his said office. Every such conveyance not so recorded is void as against any person who subsequently purchases or acquires by exchange or contracts to purchase or acquire by exchange, the same real property or any portion thereof, . . . in good faith and for a valuable consideration, from the same vendor or assignor, his distributees or devisees, and whose conveyance, contract or assignment is first duly recorded . . . .
In other words, a person who purchases real property situated in New York from a vendor for valuable consideration and in good faith, and who promptly records the transaction with the clerk in the county where the property is located, has superior rights to that property as against a person who also purchases the same property from the same vendor but fails to record the transaction first in time.
In order for the county recording officer to record the transaction properly in accordance with RPL § 291, the "acknowledgment or proof duly certified" must include a generally accepted form of signature.See General Construction Law ("GCL") § 46 (defining "signature" as "any memorandum, mark, or sign, written, printed, stamped, photographed, engraved or otherwise placed upon any instrument or writing with intent to execute or authenticate such instrument or writing").
Article 9 of the RPL does not specify standards and formats for the documents that the purchaser files with the recording officer, and it makes no mention of electronic signatures. With its expansive definition of "signature," GCL § 46 seemingly paves the way for the use of electronic signatures. Moreover, several months prior to the passage and effective date of E-SIGN, New York enacted the Electronic Signature and Records Act ("ESRA"), which generally provides that "an electronic signature may be used by a person in lieu of a signature affixed by hand" and that "an electronic signature shall have the same validity and effect as the use of a signature affixed by hand." St. Tech. Law § 104(2).
However, squarely applicable to your inquiry, ESRA specifically excepts from its scope "any conveyance or other instrument recordable under article nine of the real property law." St. Tech. Law § 107(3). Thus, we agree that State law bars recording officers at the present time from accepting filings submitted for recordation that contain electronic signatures.
 2. Relevant Provisions of E-SIGN
As your letter to us suggests, the question thus arises whether State law barring the acceptance of electronic signatures in recordations of real property is preempted by E-SIGN, a federal law governing the legal validity of electronic signatures. Relevant provisions of this federal statute are briefly reviewed below.
E-SIGN § 101(a)(1). Effective October 1, 2000, E-SIGN establishes a general rule of validity for electronic signatures and generally preempts state laws that deny legal recognition to electronic signatures. E-SIGN § 101(a)(1) provides that "[n]otwithstanding any statute, regulation, or other rule of law . . . with respect to any transaction in or affecting interstate or foreign commerce, a signature, contract, or other record relating to such transaction may not be denied legal effect, validity, or enforceability solely because it is in electronic form." E-SIGN does not require private parties to conduct transactions electronically — to the contrary, a consumer must affirmatively consent to the use of electronic records as part of a transaction — but if private parties opt to do so, E-SIGN preempts state courts from refusing to recognize the legal validity of the transaction solely because of its electronic component. See E-SIGN §§ 101(b)(2), 101(c)(1). Notwithstanding this preemptive effect, the legal effect of an electronic record may be denied, however, if it is "not in a form that is capable of being retained and accurately reproduced for later reference." E-SIGN § 101(e).
The full import and scope of E-SIGN § 101(a) may be gleaned only from a close reading of the terms defined in E-SIGN § 106. E-SIGN § 106(13) provides that "transaction" means "an action or set of actions relating to the conduct of business, consumer, or commercial affairs between two or more persons," including "(A) the sale, lease, exchange, licensing, or other disposition of (i) personal property, including goods and intangibles, (ii) services, and (iii) any combination thereof; and (B) the sale, lease, exchange or other disposition of any interest in real property." Moreover, to cover situations when a unit of government acts as a market participant, ESIGN § 106(8) defines "person" as,inter alia, a "governmental agency." Finally, E- SIGN § 106(1) defines "consumer" as "an individual who obtains, through a transaction, products or services which are used primarily for personal, family, or household purposes."
Thus, it appears that the activities covered by E-SIGN § 101(a) relate to the transfer of an interest in real property from one person (which may include a governmental agency, when it acts in a proprietary and nongovernmental capacity) to another. The provision does not, however, cover the related but distinct activity of recordation of a private transaction, which is purely governmental in nature.
The statute's legislative history confirms this reading of E-SIGN § 101(a). The Congressional record demonstrates that the federal legislature carefully crafted the definition of "transaction" to exclude uniquely "governmental" functions from its scope. Congressman John Dingell of Michigan explained the kinds of transactions covered by E-SIGN:
 You will note that the definition of "transaction" includes business, commercial, or consumer affairs. The Conferees specifically rejected including "governmental" transactions. Members should understand that this bill will not in any way affect most governmental transactions, such as law enforcement actions, court actions, issuance of Government grants, applications for or disbursement of Government benefits, or other activities that the Government conducts that private actors would not conduct. Even though some aspects of such governmental transactions (for example, the Government's issuance of a check reflecting a Government benefit) are commercial in nature, they are not covered by this bill because they are part of a uniquely governmental operation.
H.R. Conf. Rep. No. 00-106, at H4357 (June 14, 2000) (emphasis added).
In fact, in signing E-SIGN into law, President Bill Clinton stated that he did so "with the understanding" reflected by Congressman Dingell's statement that "this legislation principally addresses consumer and commercial activities, not governmental activities." Attachment to Memorandum dated September 25, 2000 of the Office of Management and Budget ("OMB"), Guidance On Implementing the Electronic Signatures inGlobal and National Commerce Act (E-SIGN), at Appendix A ("OMB Mem.") (found at www.whitehouse.gov/omb); see also id. at 3 ("Congress specifically rejected the inclusion of the term `governmental transaction' in the definition of transactions to E-SIGN, although that term did appear in earlier versions of the bill. . . . E-SIGN does not prescribe requirements pertaining to activities that are governmental (as opposed to business, consumer, or commercial) in nature . . . ."); Jim Whitter ("Whitter"), What Governors Need to Know About E-SIGN: The Federal LawAuthorizing Electronic Signatures and Records (Sept. 22, 2000), at 4 (found at www.nga.org) ("Governmental affairs are not included in the E-SIGN definition of `transaction.'").
E-SIGN § 103. E-SIGN § 103 sets forth various exceptions from the general rule of preemption established by E-SIGN § 101. It provides that E-SIGN § 101 does not apply to, inter alia, statutes, regulations or other rules of law governing the creation and execution of wills, codicils, or testamentary trusts (E-SIGN § 103(a)(1)); statutes, regulations or other rules of law governing adoption, divorce or other matters of family law (E- SIGN § 103(a)(2)); or court orders, court notices, or official court documents "required to be executed in connection with court proceedings" (E-SIGN § 103(b)(1)). E-SIGN's legislative history reveals that the Senate version of E-SIGN at one time included a specific exception for "documents of title which are filed of record with a governmental unit until such time that a State or subdivision thereof chooses to accept filings electronically," but that exception later was dropped by the Conference Committee responsible for harmonizing the different versions of the bill passed by the Senate and the House. H.R. Conf. Rep. No. 00-106, at H4354 (June 14, 2000); S. Conf. Rep. No. 00-106, at S5285 (June 16, 2000).
E-SIGN § 104(a). E-SIGN § 104 clarifies E-SIGN's applicability with respect to "federal and state governments." E-SIGN § 104(a) provides that nothing in E-SIGN § 101(a) "limits or supercedes any requirement by a Federal regulatory agency, self-regulatory organization, or State regulatory agency that records be filed with such agency or organization in accordance with specified standards or formats." Although E-SIGN § 104(a) makes no express mention of paper filings, and while other subsections of E-SIGN § 104 generally forbid state agencies from enacting any new regulations related to filings that "impose or reimpose any requirement that a record be in a tangible printed or paper form," E-SIGN § 104(c)(1), the legislative history of E- SIGN § 104(a) makes clear that "standards and formats" exempt from E-SIGN's general rule according legal validity to electronic signatures and records may include requirements for "paper filings or records." H.R. Conf. Rep. No. 00-106, at H4354; S. Conf. Rep. 00-106, at S5286; seealso Whitter at 4 ("The federal act recognizes that states need to control how and when information is submitted to their agencies.").
E-SIGN § 104(a) grandfathers existing state regulations that make no provision for the filing of documents containing electronic signatures, but nowhere does the statute define the term "State regulatory agency."Cf. E-SIGN § 106(6) (defining "Federal regulatory agency"); id. § 106(11) (defining "self- regulatory organization"); id. § 106(12) (defining "State"). It therefore is unclear whether the term "State regulatory agency" encompasses the duties of county recording officers, who work at a local level of government and do not technically perform "regulatory" functions of the State in discharging their duties pursuant to Article 9 of the RPL.
 B. Analysis
It is our view, shared by commentators and the federal Office of Management and Budget alike, that E-SIGN probably does not preempt state recording acts like Article 9 of the Real Property Law. We believe that county recording officers in New York therefore are not obligated by E-SIGN to accept any filing for recordation that contains only an electronic signature.
Although the text and scope of E-SIGN § 101(a)(1) is not entirely clear on its face in some respects, the comments by Congress Dingell in E-SIGN's legislative history, combined with a close reading of the relevant terms defined in E-SIGN § 106 and discussed above, indicate that the recordation contemplated by Article 9 of the RPL is precisely the type of "uniquely governmental" transaction unaffected by the preemptive sweep of E-SIGN § 101(a)(1). See H.R. Conf. Rep. No. 00-106, at H4357; see also OMB Mem. at 5 ("[t]he statutes and regulations affected by E-SIGN . . . relate to business, consumer, or commercial, rather than governmental, activities"); id. at 14 ("distinctively governmental activities are not within the scope of E-SIGN"); Craig C. Page ("Page"), Electronic Transactions, Digital Signatures, ElectronicRecordation, at 7 (located at www.ctla.org/e-commerce/electronic transactions) ("The general consensus is that . . . the legislation wasnot intended to apply to county recorders . . . .") (emphasis in original).
E-SIGN paves the way for private parties engaged in a transaction for the sale of real property situated in New York to conduct (by express mutual agreement) their transaction through the use of electronic records, but private parties simply cannot opt to perform recording functions themselves. See H.R. Conf. Rep. No. 00-106, at H4357. Under New York law, that task falls squarely on the shoulders of recording officers.See RPL § 291. Given this circumstance, we believe that E-SIGN § 101(a)(1) is without force in the context about which you inquire, and applicable State law prohibits recording officers from accepting a filing that contains an electronic signature. See St. Tech. Law § 107(3).
If the text of E-SIGN § 101(a)(1) were as clear as its legislative history in this regard, our response to your inquiry would be at an end. But because E-SIGN § 101(a)(1) does not, at least at first blush, explicitly reflect Congressman Dingell's comments about the definition of "transaction," we also think it is useful to consider other provisions of E-SIGN that may shed light on whether E-SIGN preempts Article 9 of the RPL.
As described above, E-SIGN § 104(a) expressly permits a state regulatory agency to continue to require that records be filed with an agency "in accordance with specified standards or formats." Moreover, the legislative record relating to E-SIGN § 104(a) makes clear that "specified standards or formats" may entail "paper filings or records." H.R. Conf. Rep. No. 00-106, at H4354; S. Conf. Rep. 00-106, at S5286; seealso OMB Mem. at 3 (E-SIGN "preserves an agency's existing authority to specify standards and formats for records filed with the agency"). Thus, E-SIGN § 104(a) allows a state agency to reject electronic records submitted for filing if existing regulations do not provide for filings in that format. See Whitter at 3 ("E-SIGN does not compel a state to accept electronic signatures . . . [in] filings it accepts from the general public or regulated entities.").
Yet, E-SIGN § 104(a)'s particular exception to the statute's general rule of preemption applies by its terms only to "federal and state governments," and not local units of government, which is the level at which New York law provides for recordation to take place. See RPL § 291. Nonetheless, the fact that county recording officers in New York conduct themselves pursuant to State and not local law supports our conclusion that E-SIGN does not preempt Article 9 of the RPL. See AceAuto Body Towing Ltd. v. City of New York, 171 F.3d 765, 775 (2d Cir.), cert. denied, 528 U.S. 868 (1999) (no preemption where state delegated its regulatory authority to a municipality). Furthermore, even though E- SIGN defines "State" to include "the District of Columbia and the territories and possessions of the United States," E-SIGN § 106(12), and makes no mention of county or other local governments, we think that the statute's broad definition of "State" is elastic enough to encompass local units of government. See Page at 7 ("county recorders could be found to fall within the definition of `state agency'");see also Ace Auto, 171 F.3d at 775 (finding no preemption of municipality's authority where federal statute defined "State" to include only the fifty states and the District of Columbia).
E-SIGN § 104(a) also only relates to State "regulatory" authority, whereas the duties of recording officers stem from a New York statute, not a regulation. However, as at least one prominent commentator has suggested, E-SIGN § 104(a) addresses recording acts that are derived from state statutory law:
 Both State and federal law impose a number of requirements on individuals, companies, and organizations to file various documents which then become part of a publicly accessible database. Examples of such filings may be found under the real property recording acts, personal property security filings, [and] entity filings. . . . E-Sign § 104(a) preserves any requirement that records be filed with the agency or organization in specified standards or formats. This provision should protect recording systems and other filing systems from any obligation to immediately convert to electronic records.
Patricia Brumfield Fry, A Preliminary Analysis of Federal and StateElectronic Commerce Laws, at 11 (located at www.nccusl.org).
Furthermore, E-SIGN § 101(e) provides that the legal effect of an electronic signature may be denied if it is "not in a form that is capable of being retained and accurately reproduced for later reference." E-SIGN § 104(a)'s reluctance to force states to immediately adopt new standards and formats that accommodate electronic filings is tied in part to concerns about record retention and accuracy. If the integrity and authenticity of a paperless record cannot be assured over time because a state cannot, for example, properly store and retrieve filings that contain electronic signatures, then E-SIGN § 101(e) provides that the state may refuse to accept such filings.
Finally, practical considerations are furthered by our conclusion that E-SIGN does not preempt Article 9 of the RPL. To be sure, if E-SIGN does not preempt Article 9 of the RPL, the further question is presented of when exactly county recording officers in New York will be required to make the transition toward the acceptance of electronic filings absent amendments to pertinent federal or state law. But an even more compelling, countervailing concern is the likelihood that if E-SIGN obligates county recording officers to presently accept filings for recordation that contain electronic signatures, the recording system for real property transactions will suffer grave inefficiencies until such time as recording officers are fully prepared to handle such filings. In the interim, persons affected by an area of the law in which the need for certainty is paramount may be compromised irreparably.
In sum, although the issue ultimately may be decided by the courts, it is our estimation, for the foregoing reasons, that there is a substantial possibility that E-SIGN does not preempt Article 9 of the RPL or otherwise obligate county recording officers to accept for recordation a filing that contains only an electronic signature but lacks what you term an "original signature."
The Attorney General renders formal opinions only to officers and departments of State Government. This perforce is an informal and unofficial expression of the views of this office.
Very truly yours,
JAMES D. COLE, Assistant Solicitor General In Charge of Opinions
By:____________________________ ROBERT EASTON
Assistant Solicitor General